UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER FRY, JR.,

       Plaintiff,                             Hon. Janet T. Neff

v.                                          Case No. 1:13-CV-905

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age on his alleged disability onset date. (Tr. 160). He completed the tenth grade and worked previously as a CNC operator, laborer, and order clerk. (Tr. 23, 39). Plaintiff applied for benefits on October 20, 2010, alleging that he had been disabled since March 13, 2009, due to epilepsy, emphysema, back pain, depression, neck pain, headaches, arthritis, hypertension, nose bleeds, bronchitis, left leg bump, and memory problems. (Tr, 160-70, 197). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 72-159). On December 13, 2011, Plaintiff appeared before ALJ Lawrence Blatnik with testimony being offered by Plaintiff and a vocational expert. (Tr. 32-71). In a written decision dated February 17, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 15-25). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2010. (Tr. 17); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

On December 4, 2009, Plaintiff "was admitted to the hospital on a voluntary basis" after expressing that he was "thinking about suicide." (Tr. 249-51). Plaintiff reported that he was experiencing "worsening depression for the past few months with increasing suicidal ideation the

3

past few days because his relationship with his girlfriend of 16 years is getting to an end and she has not been talking to him for over a week and has not been seeing him and he feels they are breaking off." (Tr. 249). Plaintiff reported that "he has been drinking significant amounts of alcohol, up to a fifth of whiskey a day, and states that he is not able to stop doing this." (Tr. 252). Plaintiff also reported that he had previously been prescribed medication to treat seizures as well as medication to treat depression, but that he had stopped taking his medication. (Tr. 249).

The results of a mental status examination were unremarkable. (Tr. 250). Plaintiff was admitted to the hospital and resumed taking his prescribed medication. (Tr. 249-56). Plaintiff was discharged from the hospital on December 7, 2009 at which point he was diagnosed with "major depressive disorder, recurrent, without psychotic features, with complete resolution of suicidal ideations." (Tr. 257-59).

On April 16, 2010, Plaintiff was examined by Dr. Manish Prasad (Tr. 266-67). With respect to Plaintiff's mental status, the doctor observed:

> Roger is a tall, well-built male, who was casually dressed, cooperative, smiling at times. Thought processes were organized and logical. No delusions. No suicidal ideations.

(Tr. 266). The doctor further observed:

> Roger was apologetic for missing his last few appointments. He states that he has been doing better since his last visit and continues to live with his 25-year-old son along with his daughter. He states that he spends the day taking care of his grandchildren, but has also been making efforts to reconnect with his friends. He states that he still feels depressed due to the breakup of his 16-year long relationship, but feels that he is doing better in that regard. He continues to abstain from any further alcohol use and spends more time with household chores. Sleep is slightly erratic, but he also admits to erratic compliance with medications. He continues to be on Dilantin for seizure control.

4

(Tr. 266). Plaintiff's medication regimen was further modified. (Tr. 266). Treatment notes dated May 28, 2010, reveal the following:

> Roger states that he has been doing well and has been sleeping better with the increase in Trazodone. He denies experiencing any adverse effects of dizziness or drowsiness upon awakening. He also states that he has started being more socially interactive and has made a few new friends. Sleep and appetite are good. He also states that he has now been started on Prevacid by his primary care physician, which has been effective.

(Tr. 264).

Treatment notes dated July 23, 2010 indicate that Plaintiff's "mood has been good and he states that he has now become more socially active spending time playing guitar as well as meeting people." (Tr. 263). Treatment notes dated September 21, 2010 indicate that Plaintiff "has been compliant on medications" and that his "mood has been stable with improved sleep and appetite." (Tr. 262). On November 2, 2010, Plaintiff reported that "he has been doing better emotionally" and "has been doing well at home." (Tr. 260).

On December 17, 2010, Plaintiff completed a report regarding his activities. (Tr. 212-19). Plaintiff reported that he "sit[s] around" and "tr[ies] not to move a lot." (Tr. 213). Plaintiff reported that "even walking hurts my back." (Tr. 213). Plaintiff reported that he does not prepare his own meals because he "can't stand." (Tr. 214). Plaintiff reported that he does not leave the house alone because he "can die" if he has a seizure while he's alone. (Tr. 215). Plaintiff reported that "anything" including "even getting milk out of [the refrigerator]" causes him to experience back pain. (Tr. 216). Plaintiff also reported that "I haven't did any activities since 2004." (Tr. 216).

On January 5, 2011, Plaintiff's daughter, Pattie Boik, completed a report regarding Plaintiff's activities. (Tr. 228-35). Boik reported that she spends time with Plaintiff "almost every

day." (Tr. 228). She reported that on a typical day, Plaintiff takes a shower, drinks coffee, watches television, prepares his meals, and "plays his guitar." (Tr. 228). Boik reported that Plaintiff washes laundry, washes dishes, and shops for food. (Tr. 230-31). She also reported that Plaintiff plays video games regularly. (Tr. 232). She further reported that she and Plaintiff participate in "family night" where board games are played. (Tr. 228).

Treatment notes from the Center for Family Health, dated March 18, 2011, indicate that Plaintiff's seizures are "controlled on Dilantin which is in therapeutic range." (Tr. 296).

At the administrative hearing, Plaintiff testified that he has a valid driver's license, but doesn't drive because he does not have a vehicle. (Tr. 38). Plaintiff testified that he was unable to stand or walk for "long periods of time" because of back pain. (Tr. 48-49). Specifically, Plaintiff reported that he "can walk probably 100 yards" and stand for "probably about 10 minutes." (Tr. 49). With respect to his ability to lift, Plaintiff reported that "sometimes it hurts me to pull a gallon of milk out of the refrigerator." (Tr. 49). Plaintiff reported that he experiences problems bending at the waist. (Tr. 50). Plaintiff also reported that he experiences difficulty using his hands or fingers "to grasp things" because he has arthritis in his hands. (Tr. 51).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease of the lumbar spine; (2) history of a seizure disorder; (3) adjustment disorder with depressed mood; (4) history of alcohol/substance abuse, in apparent remission; and (5) hypertension, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the

---

which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-21).

The ALJ next determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can never climb ladders, ropes, or scaffolds; (2) he can only occasionally balance, stoop, crouch, kneel, crawl, squat, or climb ramps/stairs; (3) he can never use air, pneumatic, power, torque, or vibratory tools; (4) he can never work around dangerous machinery or at unprotected heights; (5) he is limited to simple, unskilled work with an SVP rating of 1 or 2;[2] (6) he is able to understand, remember, and carry out only short and simple instructions; (7) he is limited to routine work that does not require frequent significant changes or adaptations; and (8) he is limited to work that does not involve meeting production quotas or goals or keeping pace with workers. (Tr. 21).

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant

---

[2] SVP ratings measure the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* Dictionary of Occupational Titles, Appendix C, available at http://www.occupationalinfo.org/appendxc_1.html (last visited on May 30, 2014). A job with an SVP rating of 1 corresponds to a job that a typical worker can perform after a "short demonstration only." A job with an SVP rating of 2 corresponds to a job that a typical worker can perform after "anything beyond short demonstration up to and including 1 month." *Id.*

can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed in the state of Michigan approximately 13,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 63-68). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.          **The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff argues that he is entitled to relief because the ALJ failed to consider his non-severe impairments when assessing his residual functional capacity, contrary to the requirements of Social Security Ruling 96-8p. Specifically, Plaintiff asserts that the ALJ failed to sufficiently consider his headaches and arthritis.

Social Security Ruling 96-8p provides that in determining a claimant's RFC, the ALJ must "assess [the claimant's] work-related abilities on a function-by-function basis." *See* Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *1 (S.S.R., July 2, 1996). As the Sixth Circuit has recognized, however, while a "function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir., Mar. 4, 2002)

9

(citation omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* (citation omitted), *see also*, *Rudd v. Commissioner of Social Security*, 2013 WL 4767020 at *9 (6th Cir., Sept. 5, 2013) (SSR 96-8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports her conclusions").

Plaintiff bears the burden through step four of the sequential process, the point at which his RFC is determined. The record does not support the argument that Plaintiff's alleged headaches or arthritis impose on him any limitations greater than those recognized by the ALJ. The ALJ discussed at length the medical evidence in assessing Plaintiff's RFC. The ALJ's RFC determination is supported by substantial evidence and complies with Social Security Ruling 96-8p. Accordingly, this argument is rejected.

**II.        The ALJ's Assessment of Plaintiff's Non-Exertional Impairments is Supported by Substantial Evidence**

Plaintiff next argues that he is entitled to relief because the ALJ failed to recognize that he "is disabled and unable to perform the basic mental demands of unskilled work." Specifically, Plaintiff asserts that the ALJ's observation that he experiences moderate limitations with respect to concentration, persistence, and pace is inconsistent with both the ALJ's RFC determination and the conclusion that there exists jobs which he can perform despite his limitations. In support of his argument, Plaintiff relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010). Plaintiff's reliance on this authority, however, is misplaced and unpersuasive.

In *Ealy*, Jimmy Ealy's application for disability benefits was denied by the Social Security Administration following a hearing before an Administrative Law Judge. *Id.* at 506. The medical record before the ALJ contained the conclusion by Dr. Scher that Plaintiff was limited to the performance of "simple repetitive tasks" in "[two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516. The ALJ expressly adopted this limitation. *Id.* The ALJ also found that Ealy "has moderate difficulties" with regard to concentration, persistence, or pace. *Id.* at 510. Despite expressly adopting the limitation articulated by Dr. Scher, the hypothetical question which the ALJ posed to the vocational expert stated, in relevant part, "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* at 516.

The Sixth Circuit found that the ALJ's reliance on the response to this particular question was improper because the ALJ, having expressly adopted the limitation articulated by Dr. Scher, "should have included [in his hypothetical question] the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id.* As the Sixth Circuit concluded, because "Ealy's limitations were not fully conveyed to the vocational expert," the ALJ's reliance on the vocational expert's testimony could not constitute substantial evidence. *Id.* at 516-17.

Contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that a finding that a claimant is limited to "simple work" is somehow legally deficient. *See, e.g., Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio, Feb. 1, 2013) (distinguishing *Ealy* and limiting it to its facts); *Steed v. Astrue*, 2012 WL 1097003 at *9 (N.D. Ohio, Mar. 20, 2012) (same); *Alonso v. Commissioner of Social Security*, 2011 WL 4526676 at *11 (W.D. Mich., Aug. 8, 2011) (same); *McGaha v. Astrue*, 2012 WL 762176 at *5 (E.D. Ky., Mar. 7, 2012) (same)*.* Rather, *Ealy*

simply reiterates the long-held notion that if the ALJ relies on the response to a hypothetical question, such question must accurately portray the claimant's limitations and be consistent with the ALJ's express findings. *See, e.g., Clayton*, 2013 WL 427407 at *7; *Steed*, 2012 WL 1097003 at *9; *Alonso*, 2011 WL 4526676 at *11; *McGaha*, 2012 WL 762176 at *5.

In *Ealy*, the ALJ expressly adopted a specific limitation which he then failed to include in his hypothetical to the vocational expert. Here, no such shortcoming or inconsistency exists. The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 13,500 such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical question the ALJ posed to the vocational expert. Accordingly, this argument is rejected.

**III.     The ALJ's Assessment of Plaintiff's Seizures is Supported by Substantial Evidence**

Finally, Plaintiff argues that he is entitled to relief because the ALJ failed to properly consider the statements submitted by "two witnesses as to the effects and frequency of [Plaintiff's] seizures." The ALJ considered the allegations that Plaintiff experiences "frequent seizures," but discounted such noting that "the available medical evidence, including [the] most recent submission from Center for Family Health, indicates that [Plaintiff's] seizure disorder is controlled with medication." (Tr. 22). As noted above, treatment notes from the Center for Family Health, dated March 18, 2011, indicate that Plaintiff's seizures are "controlled on Dilantin which is in therapeutic

range."  (Tr. 296).   The ALJ's assessment of Plaintiff's seizure disorder, as well as the aforementioned witness statements, is supported by substantial evidence.  This argument, therefore, is rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  June 6, 2014                                /s/ Ellen S. Carmody
                                                          ELLEN S. CARMODY
                                                          United States Magistrate Judge